**FIRST OF MICHIGAN CORPORATION, et. al., Plaintiffs,**

v.

**Roger L. SWICK, individually and as Trustee for his IRA, et al., Defendants.**

**Civ. A. No. 94–CV–60105–AA.**

United States District Court, E.D. Michigan, Southern Division.

March 7, 1995.

Michael P. Coakley, Thomas R. Cox, Miller, Canfield, Detroit, MI, for plaintiffs First of Michigan Corp., Norman J. Zerfas.

Anthony V. Trogan, Jr., Weisman, Trogan, Bingham Farms, MI, David M. Foster, Farmington Hills, MI, for defendants Roger L. Swick, Mary L. Swick, individually and as trustees for their IRA.

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

LA PLATA, District Judge.

On April 21, 1994, plaintiffs First of Michigan Corporation and Norman Zerfas, a for-mer registered representative of First of Michigan, filed this Complaint and Petition for injunctive relief barring arbitration by defendants. Defendants Roger L. Swick, individually and as trustee of his IRA, and Mary L. Swick, individually and as trustee of her IRA, filed a Demand for Arbitration with the National Association of Securities Dealers, Inc. ("NASD"), asserting claims arising from a number of investments made with plaintiffs. Plaintiffs seek summary judgment on the Complaint, asking that the Court bar almost all of the claims asserted in arbitration on the grounds that they were not timely filed.

It is not disputed that defendants executed Uniform Submission Agreements agreeing to submit their disputes with plaintiffs to arbitration "in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization." Plaintiffs maintain that the claims are untimely under § 15 of the NASD Code of Arbitration Procedure, which provides in part:

> "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy."

The Sixth Circuit has expressly held that the question of whether claims are "eligible for submission to arbitration" under § 15 of the NASD Code is a question of law for the district court to decide. *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649 (6th Cir. 1993), also see *Roney and Co. v. Kassab*, 981 F.2d 894 (6th Cir.1992) (interpreting identical NYSE Rule 603).

The Swicks filed their Demand for Arbitration on May 10, 1993, but most of the claims were dismissed because the Director of Arbitration found they were "ineligible for submission to arbitration as they occurred more than six years prior to the date of filing." (Pls' Exh. 7). The Swicks reasserted all but two of these claims in the Amended Demand for Arbitration. Plaintiffs specifically seek to bar the claims in arbitration which relate to 14 investments made between July 1983 and February 1987. Defendants do not dispute

that the investments were purchased more than six years before the Demand for Arbitration was filed. Nonetheless, defendants argue that the claims are not time-barred for several reasons. Specifically, defendants argue that the time began running, not when the investments were purchased, but when the claims were "discovered" after consulting with an attorney, or when Zerfas retired, or when the investments lost value. Section 15 by its terms provides that the time is measured from the "occurrence or event giving rise to the act or dispute, claim, or controversy."

■ First, defendants argue that the triggering event was the retirement of Zerfas from First of Michigan, citing *Roney, supra, PaineWebber, Inc. v. Hartmann,* 921 F.2d 507 (3rd Cir.1990), and *PaineWebber, Inc. v. Farnam,* 870 F.2d 1286 (7th Cir.1989). This Court disagrees. While it is true that in each of these cases the broker left his employer more than six years before the claims were filed, none of the cases held that the broker's separation from employment was the "occurrence or event" giving rise to the claim. Instead, these cases found that the claims were barred because the broker could not have committed any "wrong" against the investor during the six years preceding the filing of the claims.

■ Although not expressly addressed by the Sixth Circuit in *Roney, supra,* or in *McCoy, supra,* this Court finds that the alleged "wrong" is the critical "occurrence or event" for purposes of § 15. In this case, the gravamen of the claims is that Zerfas recommended illiquid and speculative investments which were inappropriate given the Swicks' financial objectives. If true, the investments were "unsuitable" when they were made, and did not become so only when they lost value, or when the Swicks discovered it upon consulting with an attorney. Accord, *Dean Witter Reynolds, Inc. v. McCoy, (On Remand),* 853 F.Supp. 1023, 1030 (E.D.Tenn. 1994). Accordingly, the date of the "occurrence or event" giving rise to the claims in this case was the date of the investments, which admittedly was more than six years before the arbitration was filed. However, this finding does not end the matter as de-

fendants also argue that the time period must be equitably tolled because of plaintiffs' fraudulent concealment.

Plaintiffs are correct that the Third and Seventh Circuit cases relied on by the Sixth Circuit in *Roney, supra,* held that § 15 is an eligibility requirement, not a statute of limitations, and cannot be tolled for any reason, including fraudulent concealment. See *Hartmann, supra, Farnam, supra,* and *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992). However, the parties disagree about what position the Sixth Circuit has taken or may take on the issue in light of the comments made in *Roney, supra,* and *McCoy, supra.*

In *Roney,* the Court did not expressly decide whether fraudulent concealment would toll the period, but simply concluded that there was no showing of fraudulent concealment and, therefore, the allegations could "have no impact" on the application of the time limit. *Roney,* 981 F.2d at 900. In *McCoy,* the Court stressed that it did not reach the question of whether the claims were barred under § 15, but nonetheless stated that:

"... should the District Court find, applying the relevant State law, that Dean Witter or its agents succeeded in fraudulently concealing their alleged wrongs, then the claims potentially may still be pursued in arbitration." *McCoy,* 995 F.2d at 651.

In reply, plaintiffs rely heavily on the district court's decision in *McCoy (On Remand), supra,* finding that the Sixth Circuit left the question open allowing the court to find that the time period was *not* subject to tolling for fraudulent concealment. On the other hand, defendants rely on the decision in *Davis v. Keyes,* 859 F.Supp. 290 (E.D.Mich.1994), in which the district court found that the six-year eligibility requirement operates as a statute of repose, *except* in cases where the claim involves fraudulent concealment.

■ After careful review of the case law, particularly the Sixth Circuit opinions in *Roney, supra,* and *McCoy, supra,* this Court agrees with the district court's finding in *Davis, supra,* that the six-year period may be tolled where there has been fraudulent

concealment until the date that the fraud was discovered. In this case, the Swicks allege in the Amended Demand for Arbitration that plaintiffs "concealed the fact that the market value of the limited partnership units had decreased greatly because they did not disclose on the brokerage monthly statements sent to the Claimants' (through 1990) what the value of the limited partnerships were."

■ Defendants acknowledge that fraudulent concealment requires some affirmative fraudulent act and an additional act to perpetuate the concealment; mere inaction or silence is not sufficient. *Roney*, 981 F.2d at 900. Instead, defendants rely on the exception to this rule creating an affirmative duty when there is a "fiduciary relationship." *Lumber Village v. Siegler*, 135 Mich.App. 685, 355 N.W.2d 654 (1984). Generally, a fiduciary relationship only arises between a broker and his client where the account is discretionary, which means that the broker determines the investments to be made. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F.Supp. 951 (E.D.Mich. 1978), aff'd 647 F.2d 165 (6th Cir.1981), and *Davis v. Keyes*, 859 F.Supp. 290 (E.D.Mich. 1994).

While defendants do not argue that the accounts were "discretionary," defendants argue that a fiduciary relationship should nonetheless arise because Zerfas maintained "de facto" control over the accounts. See, *Leib, supra*, and *Davis, supra*. In determining whether the broker has in fact "usurped actual control" over technically non-discretionary accounts, courts have weighed several factors. *Davis, supra*. In this case, defendants emphasize their limited education, lack of sophistication and limited investment experience. Defendants note that they had a broker/customer relationship with Zerfas for over 10 years and that their investment decisions were based on the recommendations made by Zerfas.

■ The non-moving defendants have the burden of coming forward with evidence to support the allegation that plaintiffs had a fiduciary relationship with defendants such

that an affirmative act of concealment would not be required to establish fraudulent concealment so as to toll the six-year eligibility period. Taking the evidence in the light most favorable to plaintiff, this Court finds that neither the fact that the defendants' decisions were based on the recommendation of Zerfas, nor the fact that defendants did not have experience in these types of investments, may serve as a basis for finding a fiduciary relationship existed with respect to defendants' non-discretionary accounts. *Davis, supra*. The evidence does not support a finding that defendants relinquished control over the accounts.

Therefore, because there was not a fiduciary relationship between plaintiffs and defendants, mere inaction by plaintiffs is insufficient to establish fraudulent concealment. Consequently, defendants cannot rely on fraudulent concealment to toll the six-year eligibility period in § 15 of the NASD Code and plaintiffs are entitled to summary judgment barring arbitration. Accordingly, plaintiffs' motion is GRANTED and summary judgment is ENTERED barring arbitration of the 14 investments made between July 1983 and February 1987.[1]

■

1. These investments are listed by name, amount and date of investment on page 3 of Plaintiffs'

Brief in Support of the Motion for Summary Judgment.