The OHIO COMPANY and Andrew J. Wilhelm, Petitioners,

v.

Douglas D. NEMECEK and Isabelle J. Nemecek, Respondents.

No. 95–CV–71391–DT.

United States District Court, E.D. Michigan, Southern Division.

May 15, 1995.

Gary M. Saretsky and Karen A. Gould, Hertz, Schram & Saretsky, P.C., Bloomfield Hills, MI, for petitioners.

Anthony V. Trogan, Jr., Weisman, Trogan, Young & Schloss, P.C., Bingham Farms, MI, for respondents.

*ORDER GRANTING PETITIONERS' MOTION TO DISMISS ARBITRATION CLAIMS AND ENJOIN ARBITRATION PROCEEDINGS*

HACKETT, District Judge.

The matter before the court is an action by petitioners The Ohio Company (TOC) and Andrew Wilhelm to enjoin respondents (the Nemeceks) from pursuing their claims before the Department of Arbitration of the New York Stock Exchange (NYSE). Petitioners argue that the Nemeceks' claims are stale and ineligible for arbitration.

Petitioners have requested that the court enter an order either (1) staying the NYSE proceedings pending a determination of their petition, or (2) permanently enjoining the NYSE proceedings and dismissing in its entirety the Nemeceks' NYSE claim, entitled *Douglas D. and Isabelle J. Nemecek v. The Ohio Company and Andrew J. Wilhelm,* NYSE Case No. 1995–004639. For the reasons stated in this order, petitioners' motion to dismiss the Nemeceks' arbitration claims and permanently enjoin the pending arbitration proceedings shall be granted.

## I. *JURISDICTION*

■ Federal jurisdiction in this case is based on diversity of citizenship: Petitioner TOC is an Ohio corporation, and petitioner Wilhelm is an Ohio resident; respondents the Nemeceks reside in Michigan; the amount in controversy exceeds $50,000. Furthermore, the courts, rather than the arbitrators, must decide whether claims are eligible for arbitration. *AT & T Tech. v. Communications Workers of Amer.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, 651 (6th Cir.1993).

## II. *FACTS*

The Nemeceks maintained an investment account with TOC, a securities brokerage firm, for many years. Andrew Wilhelm was the account executive who serviced their account. In connection with their account, the Nemeceks elected to arbitrate any dispute they might have with TOC and/or Wilhelm.

In addition, they submitted a Uniform Submission Agreement (USA) to the NYSE along with their arbitration claim. In the USA, the Nemeceks agreed that the arbitration would be "conducted in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization [the NYSE]." Thus, on February 27, 1995, the Nemeceks commenced an arbitration proceeding before the NYSE alleging various securities law violations.

The Nemeceks' complaint alleges wrongdoing regarding certain transactions effectuated from April 1986 through March 1988. Specifically, the complaint focuses on three limited partnership investments which were part of the Nemeceks' investment portfolio. The limited partnerships in question are:

| INVESTMENT | DATE | AMOUNT |
| --- | --- | --- |
| Americorp III | 04/09/86 | $10,000 |
| UTS Pickett Suite Hotel | 07/22/87 | $24,000 |
| UTS Pickett Suite Hotel | 07/07/88 | $ 4,487.50 |
| Detroit South Motel LP | 03/17/88 | $50,000 |
| | | $88,487.50 |

The Nemeceks claim that their limited partnership investments were "unsuitable," that petitioners induced them to invest without proper disclosure of the characteristics and risks of ownership, and that petitioners made misrepresentations to them concerning their investments. The complaint asserts that the misconduct forms a basis for the following legal theories: Breach of contract, Common law fraud, Conspiracy, Promissory estoppel, Conversion, Negligence, Malpractice, Breach of fiduciary duty, Breach of Michigan securities law, Violation of Michigan Consumer's Protection Law, and Violation of the NYSE Rules of Fair Practice.

Subsequently, TOC and Wilhelm filed here their Petition for Declaratory Judgment Enjoining and Dismissing Arbitration Proceedings. Petitioners argue that the NYSE Rules impose strict time limitations upon the submission of claims to arbitration and that the Nemeceks' claim is untimely and ineligible for arbitration. Because arbitration was set for July, 1995, petitioners also filed a Motion for Preliminary Injunction Dismissing Arbitration Claims and Enjoining Arbitration Proceedings. A hearing on petition-

ers' motion was held on May 4, 1995. At the conclusion of the hearing, the parties were told to expect a written order granting the motion for preliminary injunction. Upon review, the court has decided to permanently dismiss the arbitration claims and enjoin the arbitration proceedings for the following reasons.

### III. STANDARD OF LAW

#### A. ELIGIBILITY OF ARBITRATION PROCEEDINGS

The NYSE Rules impose strict time limitations upon the submission of claims to arbitration. Rule 603 states:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

The dispute in the present matter is whether the "occurrence or event" that starts the running of the period of eligibility is the date of purchase of the investment, or the date the investors realized (or should have realized) they had suffered some form of injury (i.e. discovery). Thus, the parties dispute whether the six-year eligibility period operates as a statute of limitations that is subject to tolling under certain circumstances (such as fraudulent concealment) or a statute of repose which is not tolled under any circumstances.

Both the Third and Seventh Circuits have concluded that Rule 603 of the NYSE Department of Arbitration Rules does not act as a statute of limitations, and that claims submitted to arbitration more than six years after the "occurrence or event" giving rise to the claim are ineligible for arbitration. *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 510–14 (3d Cir.1990); *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1292 (7th Cir. 1989). These Circuits have also held that the occurrence or event giving rise to the claim is the purchase of the securities at issue, and

that there is no tolling for allegations of fraudulent concealment. *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 512 (7th Cir.1992).

However, neither the Sixth Circuit nor the Sixth Circuit district courts have definitively addressed the issue of whether the six-year eligibility period is subject to tolling as a result of an allegation of fraudulent concealment. Comments made in the two Sixth Circuit opinions addressing NYSE Rule 603 indicate agreement with the Third and Seventh Circuits' interpretation in cases involving claims *other than* fraudulent concealment. *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649, 651 (6th Cir.1993); *Roney and Co. v. Kassab*, 981 F.2d 894, 900 (6th Cir.1992). In *Roney*, the court did not explicitly state that fraudulent concealment exempts a claim from the six-year eligibility period, but the court did lay out the requirements for fraudulent concealment and then concluded that the appellees had not stated a sufficient claim for fraudulent concealment. *Roney*, 981 F.2d at 900.

The Sixth Circuit in *McCoy*, in remanding the case to the district court for a determination of which claims were eligible for arbitration, stated:

> [S]hould the District Court find, applying the relevant State law, that Dean Witter or its agents succeeded in fraudulently concealing their alleged wrongs, then the claims potentially may still be pursued in arbitration.

995 F.2d at 651.

On remand, however, the *McCoy* district court held that tolling the eligibility period is *not* allowed based on fraudulent concealment. The court explained that the Sixth Circuit's statement, *supra*, "is dicta and is not consistent with the Sixth Circuit's holding in *Roney.*" *Dean Witter Reynolds, Inc. v. McCoy*, 853 F.Supp. 1023, 1029 (E.D.Tenn. 1994). The district court stated that it "interprets *Roney* and *McCoy* to mean that it remains an open question in the Sixth Circuit as to whether [Rule 603] should be treated as a statute of limitations which is subject to equitable tolling on the ground of fraudulent concealment." *Id.* The court then deter-

mined that "since [Rule 603] is an eligibility or jurisdictional requirement rather than a statute of limitations, it is not subject to equitable tolling on the ground of fraudulent concealment." *Id.* at 1031.

A few months later, Judge Feikens of the Eastern District of Michigan held otherwise in *Davis v. Keyes*, 859 F.Supp. 290 (E.D.Mich.1994). Relying on the Sixth Circuit cases of *Roney* and *McCoy*, the court held that the six-year eligibility period *does* operate as a statute of limitations which is subject to tolling in cases of fraudulent concealment. The court stated:

> Explicit in the court of appeals rulings and findings in *Roney* and *McCoy*, is the conclusion that the six-year eligibility period operates as a statute of repose. Implicit in the ruling is the conclusion that fraudulent concealment is a condition which tolls the six-year eligibility period. The instruction provided to the district court by the court of appeals in *McCoy* is both explicit and unambiguous. 995 F.2d at 651. If there is adequate proof of fraudulent concealment, defendants' claims more than six years old "may still be pursued in arbitration."

*Id.* at 293. Nevertheless, the court found that tolling was not warranted because defendants had not alleged facts which constituted fraudulent concealment.

Finally, the parties in this case submitted several recent unpublished opinions and hearing transcripts on point from the Sixth Circuit district courts. In two of those cases, the courts found it unnecessary to address whether an allegation of fraudulent concealment tolls the six-year eligibility period because neither of the respondents sufficiently plead fraudulent concealment. *City of Detroit Pension Fund v. Prudential Sec.*, Case No. 94–CV–71767–DT (E.D.Mich. Dec. 23, 1994) (Friedman, J.) (presently on appeal); *A.G. Edwards & Sons, Inc. v. Clark*, No. 1:94–CV–441 (W.D.Mich. Sept. 12, 1994). In another two cases, the courts both suggested that the eligibility period was subject to tolling for fraudulent concealment, but refused to actually try the issue and sent the cases to

arbitration.[1] *Vestax Sec. Corp. v. Desmond,* Case No. 94–CV–73220–DT (E.D.Mich. April 19, 1995) (Cohn, J.); *Smith Barney Inc. v. Weinhold,* Case No. 94–CV–74792–DT (E.D.Mich. March 27, 1995) (Taylor, J.). On the other hand, Judge LaPlata of the Eastern District of Michigan explicitly held that the six-year period may be tolled, but found that the defendants had not properly alleged fraudulent concealment. *First of Mich. Corp. v. Swick,* Case No. 94–CV–60105–AA, —— F.Supp. —— [1995 WL 470142] (E.D.Mich. March 7, 1995).

Clearly, the Sixth Circuit's decisions in *Roney* and *McCoy* have produced conflicting results in the district courts. Although the parties rely on those opinions to guide and persuade this court, they are not binding. The Sixth Circuit provides the precedent to which this court must adhere, and the Sixth Circuit has strongly suggested that fraudulent concealment may toll the six-year eligibility period until the date the fraud is discovered. As such, the court has entertained argument as to whether the Nemeceks' have made a sufficient showing of fraudulent concealment. However, because the Nemeceks have not sufficiently plead fraudulent concealment, the court declines to decide whether such an allegation could have an impact on the application of the six-year time limit.

## B.  *FRAUDULENT CONCEALMENT*

■ The relevant state law of fraudulent concealment must be applied to the case at bar. *McCoy,* 995 F.2d at 651. Under Michigan law, the time limit will not be tolled absent some proof that petitioners' conduct constituted fraudulent concealment. *Lumber Village, Inc. v. Siegler,* 135 Mich.App. 685, 694, 355 N.W.2d 654, 658 (1984). Generally, fraudulent concealment requires some affirmative fraudulent act or misrepresentation and an additional act to perpetuate the concealment. Mere inaction or silence is not sufficient. *Roney,* 981 F.2d at 900.

■ An exception to the affirmative act rule exists where there is a fiduciary relationship. *Lumber Village,* 135 Mich.App. at 695, 355 N.W.2d at 658. If a fiduciary rela-

tionship exists, an affirmative duty to disclose material facts arises. *Id.* Thus, under these circumstances, nondisclosure can serve as a basis for fraudulent concealment.

■ A fiduciary relationship arises between a broker and his customer when the broker is handling a discretionary account. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951, 953 (E.D.Mich. 1978), *aff'd,* 647 F.2d 165 (6th Cir.1981). The broker of a discretionary account does not need customer authorization before effecting transactions. *Id.*

■ On the other hand, a broker has only a limited duty to his customer where the customer maintains a non-discretionary account. *Id.* at 952. A non-discretionary account is one in which the customer, rather than the broker, determines which purchases and sales to make. *Id.* No fiduciary relationship arises on the basis of duties owed to non-discretionary account customers.

## IV.  *DISCUSSION*

Because more than six years have passed since the Nemeceks purchased the last of their limited partnership investments, petitioners argue that the Nemeceks' claims are stale and ineligible for submission to arbitration. Petitioners characterize the Nemeceks' claims as an unsuitability claim and a misrepresentation claim, both of which arose at the time they purchased each of the limited partnership investments more than six years ago.

■ However, the Nemeceks argue that their claim of fraudulent concealment tolls the running of the six-year eligibility period until discovery of the misconduct. Their complaint states:

11. Throughout the relationship and until a time in 1994, Respondents' *actively concealed their misconduct* in the original recommendation of these products and further, made *new continuing misrepresentations* concerning the current status of the products which Claimants believed and relied upon in light of Respondents' fiduciary

---

1. Judge Taylor stated that "a conclusory claim of fraudulent concealment, one that is less than perfect under the Federal Rules of Civil Procedure or common law fraud, is one colorable enough for the arbitration tribunal to be given jurisdiction of the case."

status and assumed superior knowledge. Respondents' misconduct was revealed to Claimants only when they sought independent advice in 1994.

(emphasis added). The Nemeceks also contend that the "active concealment" and the "new continuing misrepresentations" made within the last six years can be the basis for an independent cause of action that is eligible for arbitration. Yet, the "active concealment" concerns the original misconduct and is thus part of the fraudulent concealment claim. Similarly, the "continuing misrepresentations" pertain to the allegedly fraudulent recommendations of the investments. In addition, the Nemeceks received numerous communications and statements regarding their investments on a regular basis, which cuts against a finding of "new misrepresentations."

After careful consideration, the court determines that the Nemeceks have not plead sufficient facts to constitute a threshold showing of fraud, misrepresentation, or concealment. Their complaint summarily alleges that the limited partnership investments were "unsuitable," and that TOC, through its agent Wilhelm, did not properly disclose the characteristics and risks of ownership, made misrepresentations in the original recommendation of the investments, and "actively concealed their misconduct." The Nemeceks have been unable to explain how or why the investments were unsuitable, what petitioners should have, but failed to disclose, what was misrepresented, or how any misconduct was concealed. Because the Nemeceks have not plead with any particularity what statements or acts constituted an affirmative fraudulent act or an additional act to perpetuate the concealment, they have not suffi-

ciently alleged a claim for fraudulent concealment.

■ The Nemeceks have also claimed that the parties occupied a fiduciary relationship, so that an exception to the requirement of an affirmative act exists. The Nemeceks do not argue that their account was discretionary, but that a fiduciary relationship nonetheless arose because petitioners maintained de facto control over their account.

In determining whether a broker has in fact usurped actual control over a technically non-discretionary account, courts have weighed several factors.[2] In this case, the Nemeceks emphasize their limited education and investment experience and that they based their decisions on petitioners' recommendations. However, petitioners have explained that the Nemeceks authorized each and every investment made through TOC, that the Nemeceks bought six investments prior to their first limited partnership purchase, and that the Nemeceks executed subscription documents attesting to their receipt of prospectuses that warned of risk and acknowledging and accepting the risks of the investments voluntarily. Additionally, the Nemeceks received monthly statements on the performance of at least one of their limited partnership investments. These facts do not support a finding that the Nemeceks relinquished control over their account. Petitioners, as brokers, had a duty to make recommendations based on their skill and knowledge, but the fact that the Nemeceks followed their advice does not alone constitute usurpation of control so as to impose a fiduciary relationship on petitioners as to the Nemeceks' nondiscretionary account. As such, mere inaction by petitioners is insufficient to establish fraudulent concealment.[3] An affirmative fraudulent act must be prop-

**2.** (1) Courts examine the age, education, intelligence, and investment experience of the customer; (2) if the broker was socially or personally involved with the customer, the courts are likely to conclude that the customer relinquished control because of the relationship of trust and confidence; (3) if many of the transactions occurred without the customer's prior approval, the courts will often interpret this as a serious usurpation of control by the broker; (4) if the broker and the customer speak frequently with each other regarding the status of the account or the prudence

of a particular transaction, the courts will usually find that the customer, by maintaining such active interest in the account, thereby maintained control over it. *Davis,* 859 F.Supp. at 294 (quoting *Leib,* 461 F.Supp. at 954).

**3.** Even if a fiduciary relationship did exist so that there was an affirmative duty to disclose material facts, the Nemeceks did not allege any specific nondisclosure that could serve as the basis for a fraudulent concealment action.

erly alleged to sustain such a claim, and the Nemeceks have not done so.

Lastly, the Nemeceks advanced one final argument:

> If the [Nemeceks'] allegation of fraud is not sufficient and this Court requires *factual* development, then the [Nemeceks] request the opportunity to take discovery and to present affidavits, testimony or other evidence of fraudulent concealment to this Court. The [Nemeceks] believe, however, that a review of [their] Statement of Claim before the NYSE Arbitration Tribunal, tested by its rules of pleading, is all this Court may and should do. Otherwise, this Court must, in effect allow discovery and a mini-trial on the issue of eligibility before it can decide the issue of whether there has been concealment.

Br.Opp'n Pls.' Pet. at 10. Thus, the Nemeceks claim that their complaint, although completely devoid of any facts to support a fraudulent concealment claim, is sufficient to sustain such a claim under the NYSE rules of pleading, so this court should submit the case to the arbitration tribunal. Alternatively, if the court retains jurisdiction to determine eligibility, but finds that fraud was not sufficiently plead, the Nemeceks request discovery and a "trial" to determine whether there was fraudulent concealment.

The Sixth Circuit has held that this court must determine whether the Nemeceks' complaint is "eligible" for arbitration. This means the court must decide whether the complaint is one colorable enough to submit to arbitration. In other words, the Nemeceks must make a prima facie showing of eligibility. Thus, the court does not have to determine the merits of the claim—whether there was fraudulent concealment, but only whether the Nemeceks have sufficiently alleged a claim. If the Nemeceks properly plead fraudulent concealment, their complaint is eligible for arbitration, and the tribunal must decide the merits of the case.

██ However, the only way this court can test whether the Nemeceks have properly plead their claim is by its own rules of procedure. Had the Sixth Circuit intended that the court determine eligibility based on the NYSE "rules of pleading", it would have so

held. Accordingly, in this court, fraud must be plead with particularity, so that discovery is not used as a tool to search for unknown misconduct. Fed.R.Civ.P. 9(b). Therefore, the Nemeceks are not entitled to discovery at this stage of the proceedings or a "mini-trial" in this court on the issue of fraudulent concealment. Simply, if their case is plead properly, it goes to arbitration. However, the Nemeceks have not sufficiently plead fraudulent concealment and have indicated they cannot do so without discovery.

## V. CONCLUSION

The court determines that the Nemeceks' claims as stated in their arbitration complaint are ineligible for arbitration because the complaint was filed more than six years after the date of the last limited partnership investment. Even if a claim of fraudulent concealment could toll the six-year eligibility period, no tolling is warranted in this case because the Nemeceks have not provided any proof that petitioners' conduct constituted fraudulent concealment. Accordingly, because the Nemeceks cannot make a sufficient showing of fraudulent concealment, the court need not expressly decide whether the eligibility period is subject to tolling. For the aforementioned reasons,

IT IS ORDERED that the Nemeceks are enjoined from submitting to arbitration before the NYSE their complaint entitled *Douglas D. and Isabelle J. Nemecek v. The Ohio Company and Andrew J. Wilhelm,* NYSE Case No. 1995–004639, as that complaint hereby is DISMISSED.